UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, and APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND, TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND, and THE CARPENTER CONTRACTOR ALLIANCE OF METROPOLITAN NEW YORK,<br><br>                                        Plaintiffs,<br><br>                    -against-<br><br>COMMODORE CONSTRUCTION CORP., COMMODORE MAINTENANCE CORP., GERALD MICHAEL BOYLE, and KIN KEUNG TAM,<br><br>                                        Defendants. | 25 CV _____<br><br>**COMPLAINT** |

Plaintiffs, by and through their attorneys, Virginia & Ambinder, LLP, as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION

1.      This is a civil action under Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, and other applicable law, to collect delinquent employer contributions to a group of employee benefit plans, for temporary and preliminary injunctive relief, and for related relief.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, and 29 U.S.C. §§ 185 and 1132(e)(1).

1

3.      Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) because the ERISA Funds (as defined below) are administered in this district.

## THE PARTIES

4.      Plaintiffs Trustees of the New York City District Council of Carpenters Pension, Welfare, and Annuity, Apprenticeship, Journeyman Retraining, Educational and Industry Funds (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA.  The ERISA Funds are organized and operated in accordance with Section 302(c) of the LMRA, 29 U.S.C. § 186(c), and are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. §1002(3).  The Trustees are fiduciaries of the ERISA Funds within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21).  The ERISA Funds maintain their principal place of business at 395 Hudson Street, New York, New York 10014.

5.      Plaintiffs Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund") are Trustees of a charitable organization established under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3).  The Charity Fund maintains its principal place of business at 395 Hudson Street, New York, New York 10014.

6.      Plaintiff Carpenter Contractor Alliance of Metropolitan New York ("CCA Metro," together with the ERISA Funds and the Charity Fund, as the "Funds") is a New York not-for-profit corporation. CCA Metro maintains its principal place of business at 245 5th Avenue, Suite 901, New York, New York 10016.

7.      Defendant Commodore Construction Corp. ("CCC") is a New York corporation with a principal place of business at 602 S. 3rd Avenue, Mount Vernon, New York 10550.  At relevant times, CCC is and was an employer within the meaning of Section 3(5) of ERISA, 29

U.S.C. § 1002(5), and is and was an employer in an industry affecting commerce within the meaning of Section 501 of the LMRA, 29 U.S.C. § 142.

8. Defendant Commodore Maintenance Corp. ("CMC," together with CCC as the "Commodore Entities") is a New York corporation with a principal place of business at 602 S. 3rd Avenue, Mount Vernon, New York 10550 and at 1 Stone Place, Suite 302, Bronxville, New York 10708. At relevant times, CMC is and was an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and is and was an employer in an industry affecting commerce within the meaning of Section 501 of the LMRA, 29 U.S.C. § 142.

9. Defendant Gerald Michael Boyle ("Boyle") is an individual residing in the State of New York. Upon information and belief, at relevant times, Boyle is and was the founder, chairman, president, and owner of Defendant CCC. Boyle is also listed as the CEO of CCC in documentation filed with the New York State Department of State. Upon information and belief, Boyle resides at 410 Mott Cove Road, Roslyn, New York 11576.

10. Defendant Kin Keung Tam ("Tam") is an individual residing in the State of New Jersey. Upon information and belief, at relevant times, Tam is and was the president and majority owner of Defendant CMC (with Boyle as a minority owner). Tam is also listed as the CEO of CMC in documentation filed with the New York State Department of State. Upon information and belief, Tam resides at 100 Eton Row, Unit 501, Weehawken, New Jersey 07086.

11. All Defendants regularly conduct business in the State of New York and operated pursuant to agreements entered into in the State of New York, including agreements with the New York City District Council of Carpenters to which the Funds are third-party beneficiaries.

3

**FACTUAL BACKGROUND**

**The Commodore Entities' Collective Bargaining Agreements**

12.    The New York City District Council Carpenters (the "Union") is a labor organization that represents employees in an industry affecting commerce within the meaning of Section 501 of the LMRA, 29 U.S.C. § 142, and at all relevant times has been the certified bargaining representative for certain employees of the Commodore Entities.

13.    At all relevant times, the Commodore Entities were members of the Building Contractors Association and were parties to collective bargaining agreements, project labor agreements and/or participation agreements (collectively, the "CBA") with the Union.

14.    The CBA requires employers, *inter alia*, to make specified hourly contributions to the Funds in connection with all work performed in the trade and geographical jurisdiction of the Union ("Covered Work").  Under the CBA, contributions for Covered Work are due seven (7) days after the end of each weekly work period.

15.    The CBA further requires employers, *inter alia*, to report to the Funds the number of hours of Covered Work performed by each employee during each week, with job identification numbers, via the Funds' online system and to furnish their books and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit fund contributions.

16.    Pursuant to the CBA, the documents and instruments governing the Funds, and Sections 502(g) and 515 of ERISA, the Commodore Entities are liable to the Funds for (a) all delinquent contributions, (b) interest thereon at the prime lending rate of JPMorgan Chase Bank plus two percent (2%), (c) liquidated damages calculated as the greater of (i) the interest owed as calculated above or (ii) 20% of the principal amount of the delinquency, (d) audit costs, and (e) all

4

reasonable attorneys' fees, expenses, and costs incurred by the Funds in connection with this action.

**Delinquent Contributions and Contravention of the CBA by the Commodore Entities**

17.     Beginning in or around April 2025, the Commodore Entities began failing to timely report hours and remit required contributions to the Funds in connection with Covered Work, in direct contravention of the CBA.

18.     Beginning in or around July 2025, the Commodore Entities ceased reporting hours of Covered Work altogether and, after numerous demands by the Funds, furnished hourly data in alternative formats not permitted by the CBA.

19.     As of the date of this Complaint, Defendant CCC has failed to remit required contributions to the Funds in connection with reported Covered Work performed between April 8 and May 20, 2025, and July 8 through September 2, 2025 in the reported principal amount of $1,280,825.94,[1] in direct contravention of the CBA and in violation of ERISA.

20.     As of the date of this Complaint, Defendant CMC has failed to remit required contributions to the Funds in connection with reported Covered Work performed between April 8 and May 20, 2025, June 17 and June 24, 2025, and July 8 through September 2, 2025 in the reported principal amount of $814,510.88,[2] in direct contravention of the CBA and in violation of ERISA.

21.     Beginning in or around July 2025, after two weeks of contribution payments to the Funds were returned for insufficient funds, the Commodore Entities began relying on issuance of two-party checks by general contractors to fund its benefit contributions to the Funds. A higher-

---

[1] This figure accounts for credits resulting from joint checks issued by prime contractors. *See* ¶ 21.
[2] This figure accounts for credits resulting from joint checks issued by prime contractors. *See* ¶ 21.

level contractor on a project would issue a check jointly payable to CCC and/or CMC and to the Funds.

22.     Defendants the Commodore Entities have not submitted any reports of hours of Covered Work for the period September 3 through September 30, 2025 despite repeated demands, in direct contravention of the CBA.

23.     During September 2025, the Commodore Entities made repeated false assurances and statements to the Union and to the Funds of their intention and ability to pay the delinquent contributions.

24.     Upon information and belief, most of the jobs on which the Commodore Entities accrued delinquent contributions were privately funded and were not bonded.

25.     Neither of the Commodore Entities were required by their CBA or otherwise to post a bond or other collateral with the Funds to guarantee payment of benefit contributions.

26.     On the evening of September 30, 2025, the Commodore Entities laid off their entire Union workforce, effective immediately.

27.     An email notification of the layoff stated that the decision was made due to "critical financial hardship."

28.     The Commodore Entities repeatedly contravened both the CBA and Section 515 of ERISA by their failure to remit contributions to the Funds in connection with Covered Work.

**Breach of Fiduciary Duty by Boyle and Tam**

29.     The documents and instruments governing the ERISA Funds provide that the ERISA Funds' assets include benefit contributions that a contributing employer fails to pay to the Funds by the specified due date.

30.      Section 3(21)(A)(i) of ERISA, 29 U.S.C. § 1002(21)(A)(i), provides that a person is a fiduciary of an employee benefit plan to the extent he or she exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets.

31.      Upon information and belief, at relevant times, Boyle exercised operational control of some or all the Commodore Entities' assets, including discretionary authority and discretionary control of bank accounts, funds, equipment, and other assets in the possession of CCC.  For example, Boyle (with Tam) entered into a factoring agreement in March 2025 on behalf of both Commodore Entities.

32.      Upon information and belief, at relevant times, Boyle is and was responsible for deciding whether to use monies in the possession of CCC to pay contributions to the Funds and exercised discretionary control and/or discretionary authority over the disposition of the Funds' assets by, among other things, causing CCC to fail to make contributions to the Funds in accordance with the CBA.

33.      Upon information and belief, while CCC owed contributions to the Funds, Boyle caused CCC to use, divert, or expend its assets for purposes other than making contributions to the Funds.

34.      Upon information and belief, at relevant times, Boyle is and was responsible for the failure of CCC to make contributions to the Funds in the principal amount of $1,280,825.94.

35.      Upon information and belief, at relevant times, Tam exercised operational control of some or all the Commodore Entities' assets, including discretionary authority and discretionary control of bank accounts, funds, equipment, and other assets in the possession of the Commodore

7

Entities. For example, Tam (with Boyle) entered into a factoring agreement in March 2025 on behalf of both Commodore Entities.

36.    Upon information and belief, at relevant times, Tam is and was responsible for deciding whether to use assets in the possession of CMC to pay contributions to the Funds and exercised discretionary control and/or discretionary authority over the disposition of the Funds' assets by, among other things, causing CMC to fail to make contributions to the Funds in accordance with the CBA.

37.    Upon information and belief, while CMC owed contributions to the Funds, Tam caused CMC to use, divert, or expend its assets for purposes other than making contributions to the Funds.

38.    Upon information and belief, at relevant times, Tam is and was responsible for the failure of CMC to make contributions to the Funds in the principal amount of $814,510.88.

39.    While the Commodore Entities owed contributions to the Funds, Boyle and Tam each falsely induced the Funds into relying on a promise of personal and corporate guarantees for delinquent contributions that never materialized, because upon information and belief, Boyle and Tam knew that such would render them in default of the factoring agreement they entered into on behalf of the Commodore Entities.

40.    Boyle and Tam are fiduciaries of the Funds within the meaning of Section 3(21)(A)(i) of ERISA, 29 U.S.C. § 1002(21)(A)(i).

41.    Boyle and Tam are parties in interest with respect to the Funds, within the meaning of Sections 3(14)(A), (C), (E), and/or (H) of ERISA, 29 U.S.C. §§ 1002(14)(A), (C), (E), and/or (H).

42. By the foregoing acts and omissions, Boyle and Tam failed to discharge their duties with respect to the Funds solely in the interest of the participants and beneficiaries of the Funds and for the exclusive purposes of providing benefits to the Funds' participants and their beneficiaries and defraying reasonable expenses of administering the Funds, in violation of Section 404(a)(1)(A) of ERISA, 29 U.S.C. § 1104(a)(1)(A).

43. By the foregoing acts and omissions, Boyle and Tam failed to discharge their duties with respect to the Funds with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity would use in the conduct of an enterprise of a like character and with like aims, in violation of Section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B).

44. By the foregoing acts and omissions, Boyle and Tam caused assets of the Funds to be used by or for the benefit of a party in interest, in violation of Section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D).

45. By the foregoing acts and omissions, Boyle and Tam caused the Funds to suffer substantial monetary losses.

46. Under Section 409(a) of ERISA, 29 U.S.C. § 1109(a), Boyle and Tam are personally liable to the Funds for all such losses, plus all profits Boyle and Tam have made and/or all earnings the Funds have lost as a result of such acts and omissions.

**Temporary and Preliminary Injunctive Relief is Necessary to Protect the Funds**

47. Defendants collectively owe reported but unpaid contributions to the Funds in the principal amount of $2,095,336.82. Defendants accumulated this substantial delinquency between April 2025 and August 2025.

9

48.     The amount of the delinquency excludes contributions owed by Defendants that were not reported to the Funds, including unreported contributions for work done in September 2025.  The amount of the delinquency also excludes interest, liquidated damages, attorneys' fees, costs, and other amounts due and owing from Defendants pursuant to the CBA and Section 515 of ERISA.

49.     The known principal delinquency in the amount of $2,095,336.82 accrued in connection with work performed under subcontract on several private construction projects.  Upon information and belief, these construction projects were not publicly financed and were not secured by any payment bond by the Commodore Entities or their prime contractors.  Accordingly, should Defendants fail or refuse to pay contributions due and owing to the Funds for work performed on these projects, the Funds have no recourse for collecting the principal delinquency or related damages.

50.     Upon information and belief, the Commodore Entities have been experiencing financial difficulties and cash shortages since at least March 2025. The Commodore Entities ceased making contributions to the Funds and instead used their assets to satisfy other business obligations of Defendants.

51.     Upon information and belief, under the direction of Boyle and Tam, the Commodore Entities have been diverting assets to satisfy other obligations of Defendants, instead of paying contributions to the Funds.

52.     On October 1, 2025, the Funds learned that the Commodore Entities had laid off all their entire Union workforce and had ceased operations.

10

**The Funds Are Entitled to an Audit Order and Document Preservation Order**

53.     Based on the experience of the Funds, employers experiencing financial difficulties have an incentive to and sometimes do underreport the number of hours worked by their employees for whom contributions are due and underreport or fail to report the amount of contributions owed to the Funds. The Commodore Entities have not reported all hours and contributions owed to the Funds, including hours worked and contributions owed for the Commodore Entities' last month of operations.

54.     The Funds confirm the amount of contributions owed by contributing employers by conducting periodic audits of contributing employers' books and records.  Pursuant to the CBA, the Commodore Entities are required to submit to regular audits of their books and records and to pay contributions found by the auditor to be due and owing to the Funds.

55.     Despite numerous demands, the Commodore Entities refused and continue to refuse to produce hourly reporting for their last month of operations, thereby impeding the Funds' ability to identify active projects and amounts owed on each for purposes of pursuing recovery of delinquent contributions from general contractors and/or sureties.

56.     The Commodore Entities, which are no longer operating, have not reported any hours or contributions to the Funds for their last month of operations and have not paid wages to their workers for at least the last week, and possibly two weeks, of their operations.  If Defendants move, modify, destroy, or otherwise dispose of financial and business records in their possession reflecting the amounts of contributions owed to the Funds, such spoliation of records would likely prevent the Funds from collecting such amounts.

57.     Unless Defendants are quickly ordered to preserve all records relating to the finances and operations of the Commodore Entities; comply with an audit covering June 26, 2024

through September 30, 2025; submit project-based hourly reporting for all Covered Work performed in September 2025; and refrain from liquidating or disbursing assets in which the Commodore Entities have an interest, other than in the ordinary course of business, pending investigation in this case to determine the existence and/or location of the assets of the Plaintiff Funds which are commingled and/or held in the corporate assets of the Commodore Entities – the Funds' ability to collect Defendants' delinquent contributions will be substantially and irreparably impaired.

58. The Funds have clear contractual and statutory rights to audit the Commodore Entities books and records and to collect trust assets consisting of delinquent contributions and associated damages, and are likely to succeed on the merits of this action against all Defendants.

**Defendants Must Be Enjoined From Prematurely Liquidating Assets**

59. Upon information and belief, despite ceasing operations only two days ago, the Commodore Entities are already substantively undergoing the process of liquidating their assets, such as their architectural metal and glass division, inclusive of all equipment and fixtures.

60. Upon information and belief, Defendants Boyle and Tam intend to rapidly sell at least one of the properties from which the Commodore Entities operate.

61. Upon information and belief, Defendants are liquidating and disbursing the Commodore Entities' assets in a rushed and hasty manner and without regard for equitable distribution of proceeds or their fiduciary duties to the Funds.

62. Unless Defendants are temporarily and preliminarily enjoined from liquidating or disbursing the Commodore Entities' assets other than in the ordinary course of business, the Funds' ability to collect the Commodore Entities' delinquent contributions, which are trust assets of the

12

Funds, will be substantially and irreparably impaired. This is especially so because most of the Commodore Entities' work is unbonded.

63.    The Funds have no adequate remedy at law with respect to the injunctive relief sought herein.

64.    The Defendants will suffer no significant or undue burden from complying with their statutory and contractual obligations to preserve all records relating to their finances and operations, submitting to an audit of their books and records, and being temporarily prevented from disbursing their assets other than in the ordinary course of business.

## FIRST CLAIM FOR RELIEF
*Delinquent Contributions Under ERISA and Compliance with the CBA, as to CCC*

65.    Plaintiffs repeat the allegations set forth in paragraphs 1 through 64 above and incorporate them herein by reference.

66.    At relevant times, CCC a party to, or manifested an intention to be bound by the CBA.

67.    Pursuant to the CBA, CCC was required to report to the Funds the number of hours of Covered Work performed by each employee during the preceding week and to make specified hourly contributions to the Funds in connection with all Covered Work performed by CCC within seven days of the end of the last weekly pay period.

68.    CCC contravened both the CBA and Section 515 of ERISA by its failure to remit required contributions to the Funds in connection with Covered Work performed from at least April 8 and May 20, 2025, and July 8 through September 2, 2025 in the reported principal amount of $1,280,825.94.

69.    No part of such contributions has been paid to the Funds, although payment has been duly demanded.

70.     Accordingly, pursuant to the CBA, the documents and instruments governing the Funds, and Sections 502(g) and 515 of ERISA, CCC is liable to the Funds for: (a) delinquent contributions for the period April 8 and May 20, 2025 and July 8 through September 2, 2025 in the reported principal amount of $1,280,825.94; (b) interest thereon at the prime lending rate of JP Morgan Chase plus two percent (2%); (c) liquidated damages calculated as the greater of (i) the interest charged or (ii) 20% of the principal amount of the delinquency; and (d) all reasonable attorneys' fees, expenses, and costs incurred by the Funds in collecting the delinquency.

## SECOND CLAIM FOR RELIEF
### *Delinquent Contributions Under ERISA and Compliance with the CBA, as to CMC*

71.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 70 above and incorporate them herein by reference.

72.     At relevant times, CMC was a party to, or manifested an intention to be bound by the CBA.

73.     Pursuant to the CBA, CMC was required to report to the Funds the number of hours of Covered Work performed by each employee during the preceding week and to make specified hourly contributions to the Funds in connection with all Covered Work performed by CMC.

74.     CMC contravened both the CBA and Section 515 of ERISA by its failure to remit required contributions to the Funds in connection with Covered Work performed from at least April 8 through May 20, 2025, June 17 through June 24, 2025, and July 8 through September 2, 2025 in the reported principal amount of $814,510.88.

75.     No part of such contributions has been paid to the Funds, although payment has been duly demanded.

76.     Accordingly, pursuant to the CBA, the documents and instruments governing the Funds, and Sections 502(g) and 515 of ERISA, CMC is liable to the Funds for: (a) delinquent

14

contributions for the period April 8 through May 20, 2025, June 17 through June 24, 2025, and July 8 through September 2, 2025 in the reported principal amount of $814,510.88; (b) interest thereon at the prime lending rate of JPMorgan Chase plus two percent (2%); (c) liquidated damages calculated as the greater of (i) the interest charged or (ii) 20% of the principal amount of the delinquency; and (d) all reasonable attorneys' fees, expenses, and costs incurred by the Funds in collecting the delinquency.

### THIRD CLAIM FOR RELIEF
*Breach of Fiduciary Duty by Gerald Michael Boyle*

77.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 76 above and incorporate them herein by reference.

78.     Pursuant to the documents and instruments governing the Funds, the Funds' assets include delinquent amounts that the Commodore Entities have not contributed but are required to contribute to the Funds pursuant to the CBA.

79.     Boyle is a fiduciary of the Funds within the meaning of Section 3(21)(A)(i) of ERISA, 29 U.S.C. § 1002(21)(A)(i).

80.     Boyle is a party in interest with respect to the Funds, within the meaning of Sections 3(14)(A), (C), (E), and/or (H) of ERISA, 29 U.S.C. §§ 1002(14)(A), (C), (E), and/or (H).

81.     Upon information and belief, Boyle is and was responsible for the failure of CCC to make contributions to the Funds in the principal amount of $1,280,825.94.

82.     Upon information and belief, Boyle breached his fiduciary duties under Section 404 of ERISA, 29 U.S.C. § 1104, by, among other things, failing to discharge his duties with respect to the Funds solely in the interest of the participants and beneficiaries of the Funds and/or with the care, skill, prudence, and diligence required under the circumstances.

83. Upon information and belief, Boyle breached his fiduciary duties under Section 406, 29 U.S.C. § 1106, of ERISA by, among other things, causing assets of the Funds to be used by or for the benefit of a party in interest.

84. Accordingly, pursuant to Section 409(a) of ERISA, 29 U.S.C. § 1109(a), Boyle is personally liable to the Funds for: (1) all losses incurred by the Funds as a result of Boyle's breach of fiduciary duties, in an amount to be determined at trial, but no less than $1,280,825.94; (b) interest thereon at the prime lending rate of JPMorgan Chase plus two percent (2%); (c) liquidated damages calculated as the greater of (i) the interest charged or (ii) 20% of the principal amount of the delinquency; and (d) all reasonable attorneys' fees, expenses, and costs incurred by the Funds in collecting the delinquency.

**FOURTH CLAIM FOR RELIEF**
*Breach of Fiduciary Duty by Kin Keung Tam*

85. Plaintiffs repeat the allegations set forth in paragraphs 1 through 83 above and incorporate them herein by reference.

86. Pursuant to the documents and instruments governing the Funds, the Funds' assets include delinquent amounts that the Commodore Entities have not contributed but are required to contribute to the Funds pursuant to the CBA.

87. Tam is a fiduciary of the Funds within the meaning of Section 3(21)(A)(i) of ERISA, 29 U.S.C. § 1002(21)(A)(i).

88. Tam is a party in interest with respect to the Funds, within the meaning of Sections 3(14)(A), (C), (E), and/or (H) of ERISA, 29 U.S.C. §§ 1002(14)(A), (C), (E), and/or (H).

89. Upon information and belief, Tam is and was responsible for the failure of CMC to make contributions to the Funds in the principal amount of $814,510.88.

16

90.     Upon information and belief, Tam breached his fiduciary duties under Section 404 of ERISA, 29 U.S.C. § 1104, by, among other things, failing to discharge his duties with respect to the Funds solely in the interest of the participants and beneficiaries of the Funds and/or with the care, skill, prudence, and diligence required under the circumstances.

91.     Upon information and belief, Tam breached his fiduciary duties under Section 406 of ERISA, 29 U.S.C. § 1106, by, among other things, causing assets of the Funds to be used by or for the benefit of a party in interest.

92.     Accordingly, pursuant to Section 409(a) of ERISA, 29 U.S.C. § 1109(a), Tam is personally liable to the Funds for: (1) all losses incurred by the Funds as a result of Tam's breach of fiduciary duties, including without limitation delinquent contributions in the principal amount of $814,510.88; (b) interest thereon at the prime lending rate of JPMorgan Chase plus two percent (2%); (c) liquidated damages calculated as the greater of (i) the interest charged or (ii) 20% of the principal amount of the delinquency, and (d) all reasonable attorneys' fees, expenses, and costs incurred by the Funds in collecting the delinquency.

**FIFTH CLAIM FOR RELIEF**

93.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 91 above and incorporate them herein by reference.

94.     At relevant times, the Commodore Entities were parties to, or manifested an intention to be bound by the CBA.

95.     The CBA and the documents and instruments governing the Funds require the Commodore Entities, *inter alia*, to make specified hourly contributions to the Funds in connection with all Covered Work, and to submit weekly reports of all Covered Work performed on a project-specific basis.

17

96.    The CBA and the documents and instruments governing the Funds require the Commodore Entities, *inter alia*, to submit to and comply with periodic payroll audits demanded by the Funds.

97.    The Commodore Entities owe the Funds an aggregate principal deficiency of at least $2,095,336.82.

98.    Pursuant to the documents and instruments governing the Funds, the Funds' assets include delinquent amounts that the Commodore Entities have not contributed but are required to contribute to the Funds pursuant to the CBA.

99.    Tam and Boyle are each a fiduciary of the Funds within the meaning of Section 3(21)(A)(i) of ERISA, 29 U.S.C. § 1002(21)(A)(i).

100.    Tam and Boyle are each a party in interest with respect to the Funds, within the meaning of Sections 3(14)(A), (C), (E), and/or (H) of ERISA, 29 U.S.C. §§ 1002(14)(A), (C), (E), and/or (H).

101.    Upon information and belief, Tam and Boyle are responsible for the failure of the Commodore Entities to make contributions to the Funds in the aggregate principal amount of $2,095,336.82.

102.    Upon information and belief, Tam and Boyle breached their fiduciary duties under Section 404 of ERISA, 29 U.S.C. § 1104, by, among other things, failing to discharge their duties with respect to the Funds solely in the interest of the participants and beneficiaries of the Funds and/or with the care, skill, prudence, and diligence required under the circumstances.

103.    Upon information and belief, Tam and Boyle breached their fiduciary duties under Section 406 of ERISA, 29 U.S.C. § 1106, by, among other things, causing assets of the Funds to be used by or for the benefit of a party in interest.

18

104.    Accordingly, pursuant to §§ 502 and 515 of ERISA, 29 U.S.C. § 1132 and 1145, Section 409(a) of ERISA, 29 U.S.C. § 1109(a), the CBA, and the documents and instruments governing the Funds, the Funds are entitled to an order directing the Defendants to preserve all records relating to the Commodore Entities' finances and operations, directing the Commodore Entities to submit to an audit of their books and records covering June 26, 2024 through September 30, 2025, directing the Defendants to submit all required project-based hourly reporting for Covered Work performed by the Commodore Entities in September 2025, directing the Defendants to pay all delinquent contributions and associated damages revealed by such reports and audit, and directing Defendants to refrain from liquidating or disbursing assets in which the Commodore Entities have an interest, other than in the ordinary course of business.

**WHEREFORE,** Plaintiffs respectfully request that this Court award judgment as follows:

(1)    On Plaintiffs' First Claim for Relief, ordering Defendant CCC to pay to the Funds delinquent benefit contributions for the period April 2025 through August 2025 in the amount of $1,280,825.94, plus interest, liquidated damages, and all reasonable attorneys' fees, expenses, and costs incurred by Plaintiffs in collecting the delinquency;

(2)    On Plaintiffs' Second Claim for Relief, ordering Defendant CMC to pay to the Funds delinquent benefit contributions for the period April 2025 through August 2025 in the principal amount of $814,510.88, plus interest, liquidated damages, and all reasonable attorneys' fees, expenses, and costs incurred by Plaintiffs in collecting the delinquency;

(3) On Plaintiffs' Third Claim for Relief, ordering Defendant Boyle to pay to the Funds losses incurred by the Funds in an amount to be determined at trial, but no less than $1,280,825.94, plus interest, liquidated damages, and all reasonable attorneys' fees, expenses, and costs incurred by Plaintiffs in collecting the delinquency, plus all profits Boyle has made and/or all earnings the Funds have lost as a result of Boyle's unlawful acts and omissions, in an amount to be determined at trial;

(4) On Plaintiffs' Fourth Claim for Relief, ordering Defendant Tam to pay to the Funds losses incurred by the Funds in an amount to be determined at trial, but no less than $814,510.88, plus interest, liquidated damages, and all reasonable attorneys' fees, expenses, and costs incurred by Plaintiffs in collecting the delinquency, plus all profits Tam has made and/or all earnings the Funds have lost as a result of Tam's unlawful acts and omissions, in an amount to be determined at trial;

(5) On Plaintiffs' Fifth Claim for Relief, ordering the Defendants to preserve all records relating to the Commodore Entities' finances and operations, directing the Commodore Entities to submit to an audit of their books and records covering June 26, 2024 through September 30, 2025, directing the Defendants to submit all required project-based hourly reporting for Covered Work performed by the Commodore Entities in September 2025, directing the Defendants to pay all delinquent contributions and associated damages revealed by such reports and audit, and directing Defendants to refrain from liquidating or disbursing assets in which the Commodore Entities have an interest, other than in the ordinary course of business; and

20

(6)     Awarding Plaintiffs such other and further relief as the Court may deem just and

proper.

Dated: New York, New York          Respectfully submitted,
       October 2, 2025

                                                   **VIRGINIA & AMBINDER, LLP**

By:      _____ */s/ Charles R. Virginia* _____
                      Charles R. Virginia, Esq.
                      Maura S. Moosnick, Esq.
                      40 Broad Street, 7th Floor
                      New York, New York 10004
                      (212) 943-9080
                      cvirginia@vandallp.com
                      mmoosnick@vandallp.com
                      *Attorneys for Plaintiffs*